[Cite as *State v. Friedman*, 2013-Ohio-4669.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| TINA MARIE FRIEDMAN | : | Case No. 2013CA00150 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Canton Municipal
Court, Case No. 2013 CRB 02321


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      October 21, 2013


APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

KATIE ERCHICK                                  SEAN P. RUFFIN
Assistant Canton City Prosecutor         401 Tuscarawas Street, W.
218 Cleveland Ave. SW                     Suite 200
P.O. Box 24218                                Canton, OH 44702
Canton, OH 44701

*Baldwin, J.*

{¶1}     Appellant Tina Marie Friedman appeals a judgment of the Canton Municipal Court convicting her of one count of obstructing official business (R.C. 2921.31) and sentencing her to two years probation.

<u>STATEMENT OF FACTS AND CASE</u>

{¶2}     At approximately 11:00 p.m. on June 15, 2013, 9-1-1 dispatcher Kathleen Hawk received a hang-up call from 2406 Harrisburg Road in Canton, Ohio.  When she called the residence back, she could hear arguing in the background. Appellant's son's girlfriend answered the call, and requested police assistance.

{¶3}     Officer Shane Buie of the Canton Police Department responded to the call.  When he arrived, he noticed a glass table was overturned in the home, and shattered glass was all over the floor.  The damage appeared to be fresh.  The owner of the home is Tim Friedman, appellant's son.  Tim told Buie that appellant argued with his girlfriend.  When Buie asked Tim what he wanted the police to do, Tim responded that he wanted appellant to leave his home.

{¶4}     Tim directed Buie upstairs, where appellant was sitting on a bed.  Buie told appellant that she needed to leave.  After asking her to leave several times, appellant went downstairs.

{¶5}     Once downstairs, appellant ignored Buie's instructions to leave her son's home.  Instead of walking toward the door, she walked toward the kitchen, where her son was standing.   Appellant stated that she needed to talk to her son.  At this time, Officer Mark Diels arrived as backup.   He heard Buie tell appellant that she needed to

leave, and appellant responded that she did not need to leave. At this point the officers put appellant in handcuffs and placed her in the police cruiser.

{¶6} After appellant was removed from the home, Tim informed Diels that he wanted appellant out of his house. Tim's girlfriend told police that she was not injured, and only a verbal argument had occurred between herself and appellant.

{¶7} During the course of the encounter, officers noted that appellant appeared to be intoxicated, and she later admitted to consuming three shots. Tim told the officers that appellant was a Stark County Parole Officer. Because he knew an arrest would cause problems for appellant at work, Officer Diels intended to release her after finding her a ride home. However, when Diels returned to the cruiser to speak to appellant, she told him that she did not do anything wrong, stated that this was just a misdemeanor, and told Diels that her son would never testify against her. Diels then decided to charge appellant with obstructing official business.

{¶8} The case proceeded to jury trial in the Canton Municipal Court. Appellant testified at trial that she went to Tim's house to check on him because she feared he was suicidal. She and Tim argued, and she was sitting on the stairs in front of the door to the house when police arrived. She testified that the police never asked her to leave, and immediately placed her in handcuffs.

{¶9} Appellant was found guilty by the jury and convicted as charged. She was sentenced to ninety days in the Stark County Jail, with all but one day suspended, and she was given credit for one day of jail time served. She was placed on probation for two years, and ordered to perform fifty hours of community service and to complete the Quest program. She was also ordered to attend three Alcoholics Anonymous meetings

per week for one year.   The judge told appellant at sentencing that he believed alcohol played a "tremendous component" of the charge, and he believed she needed to get help.

{¶10}   Appellant assigns five errors on appeal:

{¶11}   "I.   THE TRIAL COURT ERRONEOUSLY DENIED APPELLANT'S MOTION FOR RULE 29 ACQUITTAL.

{¶12}   "II.   APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF AMENDMENTS VI AND XIV, UNITED STATES CONSTITUTION; AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.

{¶13}   "III.   THE JURY FOUND, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THAT APPELLANT OBSTRUCTED OFFICIAL BUSINESS.

{¶14}   "IV.   THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR OBSTRUCTION OF OFFICIAL BUSINESS.

{¶15}   "V.   CRUEL AND UNUSUAL IN CONTRAVENTION OF EIGHTH AMENDMENT TO THE UNITES STATES CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION AND 14TH AMENDMENT DUE PROCESS [SIC]."

I., IV.

{¶16}   We address appellant's first and fourth assignments of error together, as both argue that the judgment was not supported by sufficient evidence.   Appellant specifically argues that she cannot be convicted of obstructing official business because the crime requires an affirmative action, and she did not "act" by failing to leave her son's home.

{¶17}    An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶18}    Appellant was convicted of obstructing official business, as defined by R.C. 2921.31(A):

{¶19}    "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶20}    Appellant cites this court to *State v. Brickner-Latham*, 3rd Dist. Seneca No. 13-05-26, 2006-Ohio-609, in support of her argument that an affirmative action is required to support a conviction of R.C. 2921.31. In that case, the appellant had refused to identify himself to police. He argued that his conviction was not supported by sufficient evidence because his refusal to identify himself to police was not an "act" as required by the statute. In rejecting his claim, the Court of Appeals for the Third District held:

{¶21}    "In the case sub judice, Brickner–Latham argues that his refusal to state his identity is does not constitute 'an act', as required under R.C. 2921.31(A). We agree with Brickner–Latham that Ohio courts have held that one cannot be guilty of obstructing official business by doing nothing because the text of R.C. 2921.31 specifically requires an offender to act. *State v. Justice* (Nov. 16, 1999), 4th Dist. No.

99CA631, citing *State v. McCrone* (1989), 63 Ohio App.3d 831, 580 N.E.2d 468, *City of Hamilton v. Hamm* (1986), 33 Ohio App.3d 175, 514 N.E.2d 942, and *Columbus v. Michel* (1978), 55 Ohio App.2d 46, 378 N.E.2d 1077. And, the refusal to produce identification upon request by a police officer will not support a finding of obstructing official business. *McCrone,* 63 Ohio App.3d at 835, 580 N.E.2d 468.

{¶22} "Nevertheless, while Ohio courts have concluded that the mere refusal to answer questions does not constitute an 'act,' it has been further held that where an individual 'also takes affirmative actions to hamper or impede the police from finding out his or her identity, the defendant may be guilty of obstructing official business.' *Justice, supra.* Further, this Court has held that running from the police 'did hinder the officers' performance of their lawful duty * * *.' *Dice,* 3rd Dist. No. 9–04–41, 2005–Ohio–2505, at ¶ 23, and, other Ohio courts have agreed. See *State v. Davis* (2000), 140 Ohio App.3d 751, 753, 749 N.E.2d 322 ('[T]he evidence shows that Davis became aware that the officers were trying to detain him and continued to walk away from them. His refusal to stop gave the officers probable cause to believe that he was impeding the performance of their duty in violation of R.C. 2921.31.'); *State v. Harris,* 10th Dist. No. 05AP–27, 2005–Ohio–4553, at ¶ 16 ('[W]e hold that fleeing from a police officer who is lawfully attempting to detain the suspect under the authority of *Terry,* is an affirmative act that hinders or impedes the officer in the performance of the officer's duties as a public official and is a violation of R.C. 2921.31, obstructing official business.'); *State v. Lohaus,* 1st Dist. No. C–020444, 2003–Ohio–777, at ¶ 12 ('[W]e hold that Lohaus's actions in fleeing across several lawns after being told to stop—and in forcing the

investigating officer to physically restrain him—fell squarely within [R.C. 2921.31's] proscriptions.').

{¶23}     "Therefore, we find that Brickner–Latham's walking away from Officer O'Connor was an affirmative act that hindered or impeded Officer O'Connor in the performance of his official duties. Further, Brickner–Latham's persistence in disregarding Officer O'Connor's requests to stop was sufficient evidence for a rational trier of fact to conclude that Brickner–Latham acted with the specific intent to prevent, obstruct, or delay Officer O'Connor's lawful duties. Moreover, it has not been alleged, so we will presume that Brickner–Latham did not have the privilege to ignore Officer O'Connor. Thus, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of R.C. 2921.31 proven beyond a reasonable doubt. Accordingly, Brickner–Latham's first assignment of error is overruled." *Id.* at ¶26-28.

{¶24}     In the instant case, Officer Buie testified that appellant's son told him he wanted appellant removed from his home because of the argument between appellant, her son and his girlfriend.  The official business of the police at this point became removing appellant from the home.  However, when police told appellant to leave her son's home, she refused to leave, she repeated to police that she did not have to leave and that she wanted to talk to her son, and she moved away from Buie and toward the kitchen to speak to her son instead of leaving.  Appellant's continued refusal to leave constituted an "act" within the meaning of the statute.  Her persistence in disregarding the orders of the police to leave the home was sufficient evidence from which a rational

trier of fact could conclude that she acted with the specific intent to prevent, obstruct, or delay Officers Buie and Diels in their lawful duties.

{¶25}     The first and fourth assignments of error are overruled.

II.

{¶26}     In her second assignment of error, appellant argues that counsel was ineffective for failing to move for a directed verdict of acquittal pursuant to Crim. R. 29 at the close of all the evidence.   She argues that the judgment is not supported by sufficient evidence for the reasons stated in her first and fourth assignments of error.

{¶27}     A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different.   *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).  In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.   *Id*.

{¶28}     For the reasons stated in assignments of error one and four, the judgment is supported by sufficient evidence.  Therefore, appellant has not demonstrated that had counsel moved for a directed verdict of acquittal pursuant to Crim. R. 29 at the end of the case, the motion would have been granted.

{¶29}     The second assignment of error is overruled.

III.

{¶30} In her third assignment of error, appellant argues that the judgment is against the manifest weight of the evidence. She specifically argues that the testimony of Officer Buie and Officer Diels is contradictory, and therefore their testimony is not credible. She argues that Officer Diels testified that when he arrived at the house, he saw a female run across the doorway followed by Buie. She argues that Buie's testimony did not corroborate Diel's observation.

{¶31} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶32} Appellant's allegation that the testimony of the officers is inconsistent is not accurate. Buie testified that once appellant came downstairs, she walked toward her son in the kitchen and away from Buie, and he had to go after her. Officer Diels testified that he arrived at this point in time and assisted Buie in "closing the gap." While Buie did not characterize appellant's movement away from him as "running," the testimony of both officers is consistent that appellant moved away from Buie rather than allowing him to escort her from the home. The judgment is not against the manifest weight of the evidence.

{¶33}     The third assignment of error is overruled.

V.

{¶34}     In her final assignment of error, appellant argues that sentencing her to two years of active probation constitutes cruel and unusual punishment.  She attaches dockets from other obstructing official business cases from the same courtroom to demonstrate that her sentence is more severe than other defendants sentenced by the same judge for the same crime.

{¶35}     The Eighth Amendment to the United States Constitution prohibits "[e]xcessive" sanctions. It provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

{¶36}     Moreover, Section 9, Article I of the Ohio Constitution sets forth the same restriction: "Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."

{¶37}     "It is well established that sentences do not violate these constitutional provisions against cruel and unusual punishment unless the sentences are so grossly disproportionate to the offenses as to shock the sense of justice in the community. *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46; *State v. Jarrells* (1991), 72 Ohio App.3d 730, 596 N.E.2d 477." *State v. Hamann*, 90 Ohio App.3d 654, 672, 630 N.E.2d 384, 395(1993).

{¶38}     At sentencing, appellant apologized for taking up the court's time, but felt that she needed to get her story out.  After noting that the jury did not believe her side of the story, the court addressed appellant:

{¶39}    "Ms. Friedman, I think it's very clear, and you can imagine how many times I hear this story that when children get in trouble, it's the parents and grandparents are the ones who suffer the most.  Trust me when I tell you.  I hear that all the time.  Okay?  But I think there was more behind this, okay, and that's what my sentencing is going to address.  Ms. Friedman, the court's going to then, as I indicated, the jury found you guilty of one count of obstructing official business, the fine will be one hundred dollars and court costs, and I'm going to order you to serve a term of ninety days in the Stark County Jail.  I'll suspend all but one day of that jail term on the condition of your good behavior for a period of two years.  I'm also going to put you on direct probation for a two year period of time.  And during that time you're going to complete fifty hours of community service by October 1st of this year.  You're going to complete the Quest program and follow any recommendations and I'm going to order you to attend three AA meetings per week for a one year period of time from the date of this entry.  I will review that part of the order on a hearing to be held on February 4th, 2014 at 9 a.m.  What that means is I believe that there was alcohol played a tremendous component of this charge, okay.  And I believe that you need to get help with that.  That's why those items will be a part of this order." Sentencing Tr., 5-6.

{¶40}    Appellant's sentence to two years of active probation is not so grossly disproportionate to the offense as to shock the sense of justice in the community. Clearly the trial court believed appellant needed help with a possible alcohol problem and that the best way to ensure that she gets the help she needs is by placing her on probation and incorporating alcohol assessment and treatment into the sentence.

{¶41}    The fifth assignment of error is overruled.

{¶42}　　The judgment of the Canton Municipal Court is affirmed.　Costs are assessed to appellant.

By: Baldwin, J.

Gwin, P.J. and

Farmer, J. concur.

_____
HON. CRAIG R. BALDWIN

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

CRB/rad

[Cite as *State v. Friedman*, 2013-Ohio-4669.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff – Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TINA MARIE FRIEDMAN | : | |
| | : | |
| Defendant - Appellant | : | CASE NO. 2013CA00150 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court, Stark County, Ohio is affirmed. Costs assessed to appellant.

_____
HON. CRAIG R. BALDWIN


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER